# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES** | : |
|  | : |
| v. | : Cr. No. 15-cr-144 (CRC) |
|  | : |
| **RENOLD PAYNE** | : |
|  | : |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Renold Payne, by his attorney, files this memorandum requesting a below-guidelines sentence in this probation revocation matter. In support of this request, the defendant states the following:

On June 8, 2022, this court is going to conduct a supervised release revocation hearing. The defendant anticipates that the court will revoke his supervision and impose a sentence. The revocation will be based on Mr. Payne's possession of a gun during the term of supervision. The defendant asks the court to impose a sentence that is below the applicable guideline range.

The probation office has calculated that the guideline range applicable to Mr. Payne's violation is 18-24 months. The defendant requests the court to impose a sentence of 12 months. He contends that a below-guidelines sentence is justified due to the onerous conditions of his incarceration.

The COVID pandemic has made the conditions of incarceration much more onerous than they would normally be. First, the long court delays occasioned by the pandemic have caused

1

courts to toll enormous amounts of time under the Speedy Trial Act. As a result, criminal defendants have been spending extended periods of time in pretrial detention. Mr. Payne, for example, had been incarcerated for about seven months before he had the opportunity to litigate his suppression motion. That length of time is about twice what it would have been in the pre-pandemic days. Incarceration in a jail is always more onerous and confining than an equivalent amount of time in a prison. While at the D.C. Jail, prisoners cannot go outside. The few classes that were offered previously were put on hold due to the pandemic. There has been almost no opportunity to work on a detail. For more than two years, every prisoner at the jail has been on lockdown every day. When a COVID contact has been discovered, entire units have been put on medical quarantine. During such times, the inmates cannot make phone calls or receive social visits. Indeed, even legal visits are suspended for any prisoner on quarantine.

Before the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), the sentencing guidelines were mandatory. A judge could impose a sentence below the guideline range only when a particular case was outside the "heartland" – meaning that there were circumstances in the case that had not been adequately provided for in the guidelines themselves. Even under that more restrictive regime, particularly onerous conditions of incarceration were recognized as a proper basis for a downward departure.

The D.C. Circuit held in 1994, in *United States v. Smith,* 27 F.3d 649, 655 (D.C. Cir. 1994), that a defendant's status as an alien could entitle him to a downward departure because some laws and BOP policies imposed harsher conditions on him than would apply to an otherwise identical citizen. A non-citizen could not benefit from 18 U.S.C. § 3624(c), which directs the BOP to allow prisoners an opportunity to spend the last 10% of their sentence – up

to a maximum of six months – in a halfway house or on home detention in order to aid their transition back into their community. BOP policy stated that non-citizens could not be housed in a minimum security facility, regardless of their security rating. In recognition of the number of privileges enjoyed by citizens that are denied to aliens, it is not uncommon for the Probation Office to suggest a downward departure for deportable non-citizens. Just last year the Circuit referred to the continued validity of alienage as the basis for a downward departure. *United States v. Thomas,* 999 F.3d 723 (D.C. Cir. 2021). *See also, United States v. Ortega-Mendoza,* 981 F.Supp. 694, 696 (D.D.C. 1997).

Courts in other jurisdictions have agreed that onerous conditions of pretrial confinement can provide the basis for a downward departure from the guidelines. *See, United States v. Pressley*, 345 F.3d 1205, 1218 (11th Cir. 2003) (defendant had spent five years on lockdown and was never allowed to go outside); *United States v. Carty,* 263 F.3d 191 (2d Cir. 2001) (horrible conditions in jail in Dominican Republic where defendant had been held were valid basis for downward departure); *United States v. Bakeas,* 987 F.Supp. 44 (D. Mass. 1997) (alien defendant's ineligibility for minimum security facility valid basis for downward departure).

Everyone incarcerated during the pandemic has been subjected to unusually onerous conditions of confinement and will continue to do so for the foreseeable future. Just as these conditions have resulted in a much larger than usual number of compassionate release orders, so too should it lead to an increase in downward departures to offset the extremely difficult conditions faced by all inmates since COVID first ravaged the nation.

**WHEREFORE**, the defendant prays that the court impose a sentence of 12 months: a six-month departure from the low end of the guideline range.

>Respectfully submitted,
>
>/s/
>_____
>Cheryl D. Stein #256693
>1824 N. Capitol Street, N.W. #1
>Washington, D.C.  20002
>(202) 388-4682 (tel.)
>(202) 393-4683 (fax)
>cdstein3@verizon.net
>   Attorney for Renold Payne